Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

United States Courts
Southern District of Texas
FILED

NOV 24 2015

David J. Bradley, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 15CR636 |
| | § | |
| JOSE LUIS RAMOS-CASTILLO | § | |

## INFORMATION

THE UNITED STATES CHARGES:

### Introduction

At all times material to this information:

1.      Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.  PDVSA and its wholly-owned subsidiaries were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.      Defendant **JOSE LUIS RAMOS CASTILLO** ("Defendant **RAMOS**"), a resident of Venezuela and then Fort Bend County, Texas, was employed by PDVSA or by wholly-owned subsidiaries or affiliates thereof from in

or around 2002 until in or around September 2013.  During that time, Defendant

**RAMOS** held a number of positions related to purchasing, including purchasing

manager and superintendent of purchasing.  Defendant **RAMOS**'s job

responsibilities included selecting companies for bidding panels, which allowed

those companies to submit bids on individual PDVSA projects, and the ability to

select winning companies for the economic portion of the bid process.  Defendant

**RAMOS** was a "foreign official" as that term is used in of the FCPA, Title 15,

United States Code, Section 78dd-2(h)(2)(A).

3.     "BUSINESSMAN 1," an individual whose identity is known to the

United States, was the owner of a number of U.S.-based energy companies,

including several companies based in the Southern District of Texas, that supplied

equipment and services to PDVSA, and a resident of Texas, and thus a "domestic

concern" and an officer, director, employee, agent, and shareholder of a "domestic

concern" as those terms are used in the FCPA, Title 15, United States Code,

Section 78dd-2(h)(1).

4.     "BUSINESSMAN 2," an individual whose identity is known to the

United States, was the owner of a number of other U.S.-based energy companies

that supplied equipment and services to PDVSA, and a resident of the United

States, and thus a "domestic concern" and an officer, director, employee, agent,

and shareholder of a "domestic concern" as those terms are used in the FCPA, Title

2

15, United States Code, Section 78dd-2(h)(1). BUSINESSMAN 1 and BUSINESSMAN 2 worked together on a number of PDVSA contracts and contract bids.

5.     "BUSINESSMAN 3," an individual whose identity is known to the United States, was the owner of a number of U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of the United States, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

**COUNT ONE**
**(18 U.S.C. § 371 – Conspiracy)**

6.     Beginning in at least 2009 and continuing through at least 2013, the defendant,

**JOSE LUIS RAMOS CASTILLO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including BUSINESSMAN 1 and BUSINESSMAN 2, to commit offenses against the United States, that is:

knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions

3

affecting interstate and foreign commerce, which financial transactions involved

the proceeds of specified unlawful activity, namely, bribery of a foreign official, a

felony violation of the FCPA, Title 15, United States Code, Section 78dd-2,

knowing that the transactions were designed in whole and in part to conceal and

disguise the nature, the location, the source, the ownership, and the control of the

proceeds of said specified unlawful activity, in violation of Title 18, United States

Code, Section 1956(a)(1)(B)(i).

## Purpose of the Conspiracy

7.     The purpose of the conspiracy was for Defendant **RAMOS**,

BUSINESSMAN 1, BUSINESSMAN 2, and their co-conspirators to engage in

financial transactions to conceal and disguise bribe payments paid to Defendant

**RAMOS** all in an effort by BUSINESSMAN 1, BUSINESSMAN 2, and their

cohorts to secretly and illegally gain an improper advantage in obtaining and

retaining lucrative energy contracts with PDVSA.

## Manner and Means of the Conspiracy

8.     The manner and means by which Defendant **RAMOS** and his co-

conspirators sought to accomplish the purpose of the conspiracy included, among

other things, the following, while in the Southern District of Texas and elsewhere:

9.     Defendant **RAMOS**, together with others, including BUSINESSMAN

1 and BUSINESSMAN 2, agreed that, in exchange for Defendant **RAMOS**'s

4

assistance in placing BUSINESSMAN 1's and BUSINESSMAN 2's companies on

the bidding panels for PDVSA projects, as well as Defendant **RAMOS**'s

assistance in selecting BUSINESSMAN 1's and BUSINESSMAN 2's companies

as the winning vendors for the economic portion of the bid process,

BUSINESSMAN 1 and BUSINESSMAN 2 would pay bribes to Defendant

**RAMOS**.

10.    Defendant **RAMOS**, together with others, including BUSINESSMAN

1 and BUSINESSMAN 2, attempted to conceal, and did in fact conceal, the nature,

source, and ownership of the bribes, which they referred to as "commissions," by

creating false justifications for the bribes, including invoices for services that were

never performed.

11.    Defendant **RAMOS**, together with others, including BUSINESSMAN

1 and BUSINESSMAN 2, further attempted to conceal, and did in fact conceal, the

nature, source, and ownership of the bribes by having them paid out of bank

accounts controlled by BUSINESSMAN 1 and BUSINESSMAN 2 which were in

the name of companies other than the companies being awarded PDVSA contracts.

12.    Defendant **RAMOS**, together with others, including

BUSINESSMAN 1 and BUSINESSMAN 2, further attempted to conceal, and did

in fact conceal, the nature, source, and ownership of the bribes by having certain of

the bribes paid into an account of a company owned by a friend of Defendant

5

**RAMOS**, who would in turn remit the money to Defendant **RAMOS** at his request.

13.     Defendant **RAMOS**, together with others, including BUSINESSMAN 1 and BUSINESSMAN 2, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by having certain of the bribes paid into an account Defendant **RAMOS** had opened in the United States in the name of a company he owned with a relative.

14.     Defendant **RAMOS** used the proceeds of the bribes he received from BUSINESSMAN 1 and BUSINESSMAN 2 to conduct financial transactions, including transferring bribe proceeds from an account held in the name of the company Defendant **RAMOS** owned with a relative to a personal account held in Defendant **RAMOS**'s own name.

### Overt Acts

15.     In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

16.     On or about June 17, 2010, BUSINESSMAN 1 helped Defendant **RAMOS** open a bank account in the Southern District of Texas, into which many of the bribes were paid.

17.    On or about June 23, 2010, BUSINESSMAN 2 caused $100,000 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 2 to Defendant **RAMOS**'s bank account in the Southern District of Texas in exchange for Defendant **RAMOS**'s assistance in awarding PDVSA contracts to companies owned by BUSINESSMAN 2.

18.    On or about September 23, 2010, BUSINESSMAN 1 caused $100,000 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 1 to Defendant **RAMOS**'s bank account in the Southern District of Texas in exchange for Defendant **RAMOS**'s assistance in awarding PDVSA contracts to companies owned by BUSINESSMAN 1.

19.    On or about December 21, 2012, BUSINESSMAN 1 caused $150,000 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 1 to a bank account in the name of a company that Defendant **RAMOS** owned with a relative in exchange for Defendant **RAMOS**'s assistance in awarding PDVSA contracts to companies owned by BUSINESSMAN 1.

20.    On or about June 21, 2013, Defendant **RAMOS** transferred $15,000 in bribe proceeds Defendant **RAMOS** received from BUSINESSMAN 1 and BUSINESSMAN 2 from an account held in the name of the company he owned with a relative to a personal account held in Defendant **RAMOS**'s own name.

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO
## (18 U.S.C. § 371 – Conspiracy)

21.     Paragraphs 1 through 5 and 7 through 20 are realleged and incorporated by reference as though fully set forth herein.

22.     Beginning in at least 2009 and continuing through at least 2013, the defendant,

### JOSE LUIS RAMOS CASTILLO,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including BUSINESSMAN 3, to commit offenses against the United States, that is:

knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

8

## Purpose of the Conspiracy

23. The purpose of the conspiracy was for Defendant **RAMOS**,

BUSINESSMAN 3, and their co-conspirators to engage in financial transactions to

conceal and disguise bribe payments paid to Defendant **RAMOS** all in an effort by

BUSINESSMAN 3 and BUSINESSMAN 3's cohorts to secretly and illegally gain

an improper advantage in obtaining and retaining lucrative energy contracts with

PDVSA.

## Manner and Means of the Conspiracy

24. The manner and means by which Defendant **RAMOS** and his co-

conspirators sought to accomplish the purpose of the conspiracy included, among

other things, the following, while in the Southern District of Texas and elsewhere:

25. Defendant **RAMOS**, together with others, including BUSINESSMAN

3, agreed that, in exchange for Defendant **RAMOS**'s assistance in placing

BUSINESSMAN 3's companies on the bidding panels for PDVSA projects, as

well as Defendant **RAMOS**'s assistance in selecting BUSINESSMAN 3's

companies as the winning vendors for the economic portion of the bid process,

BUSINESSMAN 3 would pay bribes to Defendant **RAMOS**.

26. Defendant **RAMOS**, together with others, including BUSINESSMAN

3, attempted to conceal, and did in fact conceal, the nature, source, and ownership

of the bribes, which they referred to as "commissions," by and creating false

justifications for the bribes, including invoices for services that were never performed.

27.    Defendant **RAMOS**, together with others, including BUSINESSMAN 3, initially had certain of the bribes paid directly to Defendant **RAMOS** in cash or into Defendant **RAMOS**'s personal Venezuelan bank account.

28.    Defendant **RAMOS**, together with others, including BUSINESSMAN 3, subsequently had certain of the bribes paid into a U.S. bank account in the name of a business Defendant **RAMOS** owned with a relative in order to better conceal the nature, source, and ownership of the bribe proceeds.

29.    Defendant **RAMOS** used the proceeds of the bribes he received from BUSINESSMAN 3 to conduct financial transactions, including purchasing real property in the Southern District of Texas.

## **Overt Acts**

30.    In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

31.    On or about May 22, 2012, BUSINESSMAN 3 caused $682,000 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 3 to a bank account in the name of a company that Defendant

RAMOS owned with a relative in exchange for Defendant RAMOS's assistance in awarding PDVSA contracts to companies owned by BUSINESSMAN 3.

32.     On or about June 15, 2012, BUSINESSMAN 3 caused $320,000 to be transferred from a bank account in the name of a company owned by BUSINESSMAN 3 to a bank account in the name of a company that Defendant RAMOS owned with a relative in exchange for Defendant RAMOS's assistance in awarding PDVSA contracts to companies owned by BUSINESSMAN 3.

33.     On or about August 28, 2013, Defendant RAMOS transferred $394,250.74 in bribe proceeds Defendant RAMOS received from BUSINESSMAN 3 from a bank account held in the name of a company that he owned with a relative to purchase real property in the Southern District of Texas.

## Forfeiture Allegation

34.     As the result of committing one or more of the offenses charged in Counts 1 and 2 of this Information, the defendant, JOSE LUIS RAMOS CASTILLO, shall forfeit to the United States, pursuant to Title 18, United States Code, 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of these offenses, and all property traceable to such property.

## Substitute Asset Provision

35.     If any of the above-described forfeitable property in Paragraph 34, as a result of any act or omission of Defendant **RAMOS**,

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third person;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of Defendant **RAMOS** up to the value of the forfeitable property described above.

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _____

JOHN P. PEARSON
DEPUTY CHIEF

BY: _____

AISLING O'SHEA
JEREMY R. SANDERS
TRIAL ATTORNEYS

12