**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:15-cr-00636** |
| | § | |
| **JOSE LUIS RAMOS CASTILLO** | § | |
| | § | |
| | § | |

---

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RECOGNITION OF ITS RIGHTS AS A
VICTIM AND ENTITLEMENT TO RESTITUTION**

---

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ................................................................. 1

STANDARD OF REVIEW ................................................................ 1

INTRODUCTION ............................................................................... 2

FACTUAL BACKGROUND .............................................................. 5

    A.    Bariven's Procurement Activities. ....................................... 5

    B.    Conspiracy to Bribe Employees and Overcharge Bariven. .................. 5

    C.    Rincon and Shiera Admit Bribing Bariven Employee Defendants. .................. 7

        1.    Rincon's Admitted Acts of Bribery. ........................... 7

        2.    Shiera's Admitted Acts of Bribery. ........................... 8

    D.    The Defendants' Indictment, Plea Agreements, and Sentencing Hearing. ............ 8

    E.    Bariven's Overpricing Investigation. ................................. 10

SUMMARY OF ARGUMENT ........................................................... 11

ARGUMENT AND AUTHORITIES ................................................. 12

    A.    Restitution for Victims Under the MVRA, CVRA, and FCPA. .......... 13

        1.    Requisite Notice and Victims' Rights Under the MVRA and CVRA. ........................................................... 13

        2.    The Standard for Determining Orders of Restitution. ............ 16

        3.    Importance of Restitution Orders and Making the Victim Whole. .......... 18

        4.    Burden of Proof and Standard of Review of Orders of Restitution. ........ 18

    B.    Bariven is a Victim Under Both the MVRA and CVRA. ................. 19

        1.    The Government's Indictment Recognizes that Bariven is a Victim. ........................................................... 20

        2.    The Defendants Have Admitted to Victimizing Bariven. ......... 20

        3.    The Grand Jury's Indictment and the Defendants' Admissions Establish that Bariven is a Victim as a Matter of Law. ............ 21

    C.    As a Victim Under the MVRA and CVRA, Bariven Has a Right to Restitution and Is Entitled to Participate in these Proceedings. ............ 22

CONCLUSION ................................................................................... 23

CERTIFICATE OF SERVICE ........................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Dean,*
   527 F.3d 391 (5th Cir. 2008) ........................................................................14

*In re Fisher,*
   649 F.3d 401 (5th Cir. 2011) ...............................................................1, 13, 21

*Jordan v. Dep't of Justice,*
   173 F. Supp. 3d 44, 48 (S.D.N.Y. 2016) .........................................................2, 4

*Kenna v. U.S. Dist.Court,*
   435 F.3d 1011 (9th Cir. 2006) ..................................................................14, 19

*Smith-Perry Elec. Co. v. Transp. Clearings of L.A.,*
   243 F.2d 819 (5th Cir. 1957) .......................................................................22

*Standard Oil Co. of Tex. v. United States,*
   307 F.2d 120 (5th Cir. 1962) .......................................................................22

*United States v. Alcatel-Lucent France, S.A.,*
   Case No. 1:10-cr-20906 (S.D. Fla. May 23, 2011)..............................................17

*United States v. Barrett,*
   51 F.3d 86 (7th Cir. 1995) ..........................................................................21

*United States v. BP Prods. N. Am., Inc.,*
   No. H-07-434, 2008 U.S. Dist. LEXIS 12893 (S.D. Tex. Feb. 21, 2008) ...........................15

*United States v. Brewer,*
   983 F.2d 181 (10th Cir. 1993) ......................................................................16

*United States v. De Leon,*
   728 F.3d 500 (5th Cir. 2013) .....................................................13, 16, 18, 22

*United States v. Diaz,*
   No. 09-20346-cr-jem (S.D. Fla. July 30, 2010) ....................................................17

*United States v. Eyraud,*
   809 F.3d 462 (9th Cir. 2015) ..................................................................18, 23

*United States v. F.G. Mason Engineering, Inc.,*
   No. B-90-29 (JAC) (D. Conn. Nov. 21, 1990) ......................................................17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Herrera*,
606 Fed. App'x 748 (5th Cir. 2015) ...........................................................23

*United States v. Ingrassia*,
No. cr04-0455 (ADS) (JO), 2005 U.S. Dist. LEXIS 27817 (E.D.N.Y. Sept. 7, 2005) ....................................................................................................................15

*United States v. Laney*,
189 F.3d 954 (9th Cir. 1999) ..........................................................16, 22

*United States v. Nosal*,
828 F.3d 865 (9th Cir. 2016) .........................................................23

*United States v. Sacane*,
No. 3:05cr325 (AHN), 2007 U.S. Dist. LEXIS 22178 (D. Conn. Mar. 28, 2007) .......................................................................................................15

**Statutes**

15 U.S.C. § 78dd-2 .........................................................................17

18 U.S.C. § 371 ..............................................................................17

18 U.S.C. § 3572(b) .......................................................................18

18 U.S.C. § 3612(c) .......................................................................18

18 U.S.C. § 3663(a)(2) ..................................................................16

18 U.S.C. §§ 3663A ................................................................. *passim*

18 U.S.C. § 3664 ...........................................................14, 17, 18, 22

18 U.S.C. § 3771 ..................................................................... *passim*

**Other Authorities**

*Left out of the Bargain: Settlements in Foreign Bribery Cases and Implications for Asset Recovery* (Stolen Asset Recovery Initiative, The World Bank and UNODC, 2013) ......................................................................................17

Trace International, Global Enforcement Report 2015, page 7 (March 2016) .............................17

Pursuant to FED. R. CRIM. P. 32(c)(1)(B), and 18 U.S.C. §§ 3663A, 3664, and 3771, Bariven, S.A. ("Bariven") moves the Court to recognize Bariven's rights as a victim and enter an order of restitution requiring Roberto Enrique Rincon Fernandez ("Rincon"), Abraham Jose Shiera Bastidas ("Shiera"), Christian Javier Maldonado Barillas ("Maldonado"), Alfonso Eliezer Gravina Munoz ("Gravina"), Jose Luis Ramos Castillo ("Ramos"), and Moises Abraham Millan Escobar ("Millan") (collectively, "Defendants"), jointly and severally, to make restitution to Bariven as a victim of the offenses to which these Defendants have plead guilty.[1]

## STATEMENT OF ISSUES

1. Whether Bariven is entitled to victim status under the Crime Victims' Rights Act ("CVRA") of 2004, 18 U.S.C. § 3771.

2. Whether Bariven is entitled to restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663, 3663A, and 3664 and the CVRA.

## STANDARD OF REVIEW

### ISSUE 1

In order to determine whether Bariven is a victim under the CVRA, the Court must decide whether Bariven was "directly and proximately harmed as a result of the commission of a Federal offense" by the Defendants. 18 U.S.C. § 3771(e)(2)(A). A "person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm." *In re Fisher*, 649 F.3d 401, 402-03 (5th Cir. 2011).

---

[1] Rincon pled guilty on 6/16/16, Case No. 4:15-cr-00654-1. Shiera pled guilty on 3/22/16, Case No. 4:15-cr-00654-2. In the original Indictment, Defendants Maldonado, Ramos and Gravina were described as "Foreign Officials B, C, and E," respectively. Maldonado pled guilty on 12/3/15, Case No. 4:15-cr-00635. Jose Luis Ramos pled guilty on 12/3/15, Case No. 4:15-cr-00636. Alfonso Gravina pled guilty on 12/10/15, Case No. 4:15-cr-00637. In the original Indictment, Millan was described as "Associate 2." Millan was not a Bariven employee, but an agent of Rincon and Shiera. Millan pled guilty on 1/19/16, Case No. 4:16-cr-00009.

---

If the Government moves to dismiss Bariven's motion for relief under the CVRA, "the Court must accept all factual allegations in the [motion] as true and draw all reasonable inferences in [Bariven's] favor. To survive a motion to dismiss, however, a [motion] 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Jordan v. Dep't of Justice*, 173 F. Supp. 3d 44, 48 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citations omitted).

**ISSUE 2**

In order to decide whether Bariven is entitled to restitution under the MVRA and the CVRA, the Court must determine whether Bariven is a person "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2) (defining "victim").

**INTRODUCTION**

Petroleos de Venezuela, S.A. ("PDVSA") is the state-owned oil company of the Bolivarian Republic of Venezuela ("Venezuela").  Bariven is a Venezuelan entity and the subsidiary of PDVSA in charge of, among other things, procuring and acquiring parts, materials, and equipment needed by some of PDVSA's subsidiaries and affiliates for their exploration, production, and refining activities, as well as for their gas-production related activities.  As the procurement arm of the sixth largest oil and gas company in the world, Bariven's procurement activities provide it with considerable economic clout.  The Defendants devised several schemes to capitalize on that economic clout by conspiring to defraud Bariven through bribery and fraud as discussed in more detail below.

The scope of this criminal enterprise is staggering. Rincon, Shiera and Millan have **admitted** to improperly paying bribes and other things of value to former employees of a subsidiary of Bariven—Maldonado, Gravina and Ramos—for the purpose of illegally obtaining procurement contracts from Bariven. In fact, based on Bariven's extensive forensic analysis, Bariven's losses directly and proximately caused by the Defendants due to systemic overcharging and other schemes are close to $600 million ($600,000,000).[2] Count 1 in the original Indictment (which is the same Count 1 to which Rincon, Shiera and Millan pled guilty in their respective Informations) outlines these Defendants' conspiracy to violate the FCPA. It makes clear that Bariven was victimized by the Defendants' systemic overcharging on its invoices submitted to Bariven for payment. The conspiracy charge lays out in detail how their bribes were deliberately concealed by such acts as updating and modifying contracts, including change orders, calling bribes "commissions," and by requesting or receiving invoices for equipment not provided and services not rendered. (*See* ECF No. 1-*Indictment* at ¶¶ 28, 36, 66, 76, and 96) (hereinafter referred to as *Indictment*).

---

[2] Bariven's forensic analysis figure takes into consideration only five Rincon and three Shiera-owned and controlled companies involved in the conspiracy. They are, as to Rincon: Ovarb Industrial LLC, Premiere Procurement Group LLC, Reliable Process & Instruments, LLC, Tradequip Services and Marine Inc. and VENMAR Inc. They are as to Shiera: ISS Industrial Sourcing Services LLC (a/k/a ISS Global Net), Northland Automation and Services LLC and Vmonitor LLC. The original Indictment however, lists only four Rincon- and six Shiera-owned and controlled companies involved in the conspiracy. The identities of the Rincon and Shiera companies in the original Indictment are not provided, but it is stated that the identity of these companies was known to the Grand Jury at the time the Indictment was filed. Thus, Bariven's loss figure may be even higher once it is provided the identities of all the unnamed companies mentioned in the original Indictment.

Many more Rincon and Shiera companies, other than those listed above, were used to perpetuate the criminal acts in a variety of ways, such as opening offshore bank accounts to make and receive bribe payments, transferring money among conspirators, issuing false invoices for equipment not provided and services not rendered, and for engaging in other illicit monetary transactions. In addition, there is evidence suggesting that several other unindicted individuals participated and played a key role in perpetrating these schemes including Rincon´s son, Jose Roberto Rincon Bravo, and wife, Maria Lila Rincon Bravo.

---

The conspiracy to money launder charge to which the three former employee Defendants pled guilty is presumably the same or similar money laundering conspiracy charge initially filed against Rincon and Shiera, but to which neither Rincon nor Shiera pled guilty.  Nevertheless, this conspiracy charge describes how these three Bariven employee Defendants, along with Rincon, Shiera and others conspired to launder the bribe payments.  *Id.* ¶¶ 92-98.

By every measure, Bariven is a victim of all these Defendants' criminal conspiracies.  As a victim of these criminal acts to which all these Defendants have pled guilty, Bariven moves this Court to recognize its status as a victim, afford it all rights to which a victim is legally entitled, and grant it restitution for the direct and proximate losses caused by these Defendants.[3]

It is not necessary for the Court to decide now the amount of restitution Bariven is ultimately entitled to because the sentencing has been continued to July 14, 2017, at the request of the Government.[4]  But Bariven is entitled to a ruling *now* confirming its status as a victim for purposes of the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771, and be given the rights of a victim henceforth.  We recognize there is a split of authority on whether these rights attach prior to any charge or during the investigatory stage, but the case law consistently holds that CVRA rights attach no later than the time when the criminal complaint or indictment is filed.  *See Jordan*, 173 F. Supp. 3d at 51.  With regard to the requirement that the Court entertain our

---

[3] MVRA, 18 U.S.C. § 3663A(a)(2); *see also* § 3663A(c)(1)(B); CVRA, 18 U.S.C. §§ 3771(a) and 3771(e)(2).

[4] The Government has been investigating this case for well over two years.  It had its figures calculated sufficiently to identify in the 2015 Indictment 16 specific wire transfers, down to the penny.  (*See Indictment*, at Counts 2-5, 6-10 and 12-15); and to move for personal money judgments as to five of the six Defendants, in some cases down to the penny (e.g., Ramos - $10,319,316.15; Millan - $533,578.13; Maldonado - $165,000; Gravina - $590,440; Shiera - $15 million).  All of these personal money judgments were the subject of agreed upon preliminary forfeiture motions filed in July and August of 2016, and granted by the Court.

CVRA claim now, *see* § 3771(d)(3) ("The district court shall take up and decide any motion asserting a victim's right *forthwith*.") (emphasis added).

## FACTUAL BACKGROUND

### A.    Bariven's Procurement Activities.

Bariven uses one of its subsidiaries, PDVSA Services, Inc. ("PSI"), located in Houston, Texas, as one of its agents responsible for handling the international procurements for parts, materials, equipment and related services that were the subject of some of the contracts illegally obtained by Rincon and Shiera-related entities.  (Unless otherwise noted, PSI and Bariven are jointly referred to as "Bariven.")  Defendants Maldonado, Gravina and Ramos were employed and worked for Bariven in Houston during their participation in the criminal conspiracy described in the Indictment.

The procurement contracts at issue in this case were awarded both through competitive and noncompetitive bidding.  As is usual practice and following internal procedures, the competitive bidding processes began with a Bariven purchasing analyst assembling a bidding panel identifying those companies that would be invited to submit bids in connection with a particular project.  Bariven would then issue a request for quotation to the companies included on the bidding panel and those companies would in turn submit formal bids, from which a winner was subsequently selected.  The winner then entered into a contract with Bariven, delivered the goods and received payment from Bariven.

### B.    Conspiracy to Bribe Employees and Overcharge Bariven.

The purpose of the bribery scheme was for the Defendants to enrich themselves to the detriment of Bariven:  Rincon, Shiera and Millan, by obtaining lucrative contracts with Bariven

through corrupt and fraudulent means, and the Bariven employee Defendants by accepting bribes in cash and other things of value in exchange and concealing their origin through money laundering. (*See Indictment* at ¶¶ 25, 92-97). Thus, in exchange for money and other things of value paid to Bariven employee Defendants, Rincon, Shiera and Millan sought to induce them to do certain acts in secret, including updating and modifying contract documents and issuing change orders to Bariven contracts which had been awarded to the Defendants' companies. *Id.* ¶ 28. These acts enabled Rincon and Shiera to inflate and manipulate the final contract prices to their financial gain, thus allowing them to acquire the money needed to pay the bribes to the Bariven employee Defendants.

In furtherance of the conspiracy, the Bariven employee Defendants supported and promoted the Rincon and Shiera companies before internal Bariven purchasing committees. These Defendants also prevented interference with the selection of Rincon and Shiera companies for Bariven contracts and secretly provided Rincon's and Shiera's companies with inside information concerning Bariven bidding processes, ensuring that Rincon's and Shiera's companies met certain bid conditions. Fully aware Rincon and Shiera secretly owned and controlled certain companies, and agreeing to conceal from Bariven the true ownership of these companies, the Bariven employee Defendants stacked the bidding panels with Rincon and Shiera companies. This created a false sense of competitive bidding and led Bariven to mistakenly believe its competitive bidding policies and procedures were being complied with. To facilitate this fraud and concealment, Rincon and Shiera appointed nominal owners or managers to their companies to make their companies appear to be owned and controlled by others.

---

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF**          **PAGE 6 OF 25**
**MOTION FOR RECOGNITION OF ITS RIGHTS AS A**
**VICTIM AND ENTITLEMENT TO RESTITUTION**

Rincon and Shiera were also furtively informed of certain procurements coming up for bid which gave the Rincon and Shiera companies additional time to prepare a proposal and obtain an unfair advantage over other non-Rincon and Shiera competitors vying for the same contracts.  This created in Bariven a mistaken impression that its procurement control processes were working.

Rincon, Shiera and Millan kept track of the amounts owed and paid to the Bariven employee Defendants based on the contracts that the Bariven employee Defendants helped to award to the Rincon and Shiera companies.  *Id.* at ¶ 34.

### C. Rincon and Shiera Admit Bribing Bariven Employee Defendants.

#### 1. Rincon's Admitted Acts of Bribery.

In Rincon's plea colloquy and bond hearing (ECF No. 65 and ECF No. 83, respectively),[5] Rincon admitted to owning various energy companies that he used to secure contracts with Bariven by bribing the Bariven employee Defendants from 2009 through 2014 by, among other things, purchasing real estate for them and paying for their vacation travel.  (*See Indictment,* Count 1.)[6]  Rincon also admitted paying these former Bariven employee Defendants up to 10%

---

[5] Case No. 4:15-cr-00654-1.

[6] Four of these very same companies, Tradequip Services and Marine Inc., Reliable Process and Instruments LLC, Ovarb Industrial LLC and Premiere Procurement Group LLC, represented by King & Spalding and Rincon's criminal defense counsel, Strasburger & Price LLP, are the Claimants in an arbitration filed against Bariven (ICC Case No. ICC22178/FS) seeking payment from Bariven for contracts Rincon has admitted before this Court he and his companies obtained by bribing the Bariven employee Defendants in violation of the FCPA.

Rincon's companies assert in pleadings filed in that arbitration that "*Mr. Rincon did not 'design and implement' a conspiracy against*" Bariven.  Through this statement, Rincon is now effectively retracting his guilty plea to the FCPA conspiracy entered before this Court on June 16, 2016, and attempts to further benefit financially from his illegal actions by having his companies seek payment from Bariven in arbitration contracts illegally procured.

Rincon's companies further allege in the arbitration that Rincon has already "*been held accountable by law for any and all wrongdoing*" because he has agreed to forfeiture of his assets; but this Court's docket does not show a forfeiture order having been entered against him.

---

of the value of each contract that was awarded to companies he owned or controlled through this rigged bidding process.[7] (*See* ECF No. 65).

### 2. Shiera's Admitted Acts of Bribery.

In Shiera's plea colloquy (*See* ECF No. 47 and 48),[8] Shiera admitted in open court to owning several energy companies that he used to secure contracts with Bariven by bribing Bariven employee Defendants. Shiera admitted to paying in bribes up to 10% of the value of each contract the companies he owned or controlled won from Bariven.

Upon information and belief, the factual proffers to support both Rincon's and Shiera's guilty pleas contain further admissions of fraud and corruption through the year 2015, such as paying bribes to the former Bariven employee Defendants to secure contracts through the dissemination of inside information, as well as placement on and selection of their companies from bidding panels.

### D. The Defendants' Indictment, Plea Agreements, and Sentencing Hearing.

On December 10, 2015, the sealed indictment against Rincon and Shiera was unsealed, revealing charges for numerous and varied criminal activities, including violating the FCPA, money laundering, and wire fraud. Rincon was charged with 13 counts (Counts 1–5, 11–18) and Shiera with 14 (Counts 1, 6–18).

---

[7] An additional and apparently unrelated arbitration action was filed against Bariven in The Hague (ICC Case No. ICC21754/FS) by Wells Ultimate Service LLC ("Wells"). Because Wells's *modus operandi* was suspiciously similar to Rincon's companies´ involved in the conspiracy, Bariven sought further information on Wells's ultimate ownership. Bariven uncovered Wells is owned by HRBZ Source Analyst Trust ("HRBZ"). HRBZ's grantor, trustee, and sole beneficiary is Humberto Roberto Bravo Zambrano and its manager is Hernan Guillermo Bravo Zambrano, both Rincon's brothers-in-law. Jose Roberto Rincon Bravo, Rincon's son, is a substitute trustee and Rincon himself is a member of a four member committee to choose a replacement Trustee, if necessary.

[8] Case No. 4:15-cr-00654-2.

---

Shiera entered into a plea agreement and pled guilty on March 22, 2016, to conspiracy to violate the FCPA from 2009 through 2015, and a substantive violation of the FCPA.[9]  Some three months later, on June 16, 2016, Rincon pled guilty to conspiracy to violate the FCPA from 2009 through 2014, a substantive violation of the FCPA and making a false statement on his Federal income tax return.[10]

Bariven's victim status in this criminal conspiracy cannot be disputed.  In fact, the Indictment recognizes in Count 1 that Bariven was victimized by the Defendants' overcharging on various contracts and billing Bariven for equipment never provided and services never performed or completed.  (*See Indictment*, ¶¶ 28, 36, 66, 76, and 96).  Count I of the Indictment also acknowledges that the Defendants "conceal[ed]" their criminal conspiracy from Bariven by "creat[ing] the false appearance that the bidding process was competitive," and "preventing interference with the selection of [the Defendants'] companies" for PDVSA contracts, among other clandestine acts.  *Id.* at ¶¶ 28, 32, 35.  Moreover, Bariven did not obtain any benefit from the criminal acts perpetrated by the Defendants.  Quite the contrary, Bariven paid dearly for Defendants' criminal acts; it paid overcharges close to $600 million.

Following the Government's request for a seven month continuance of the sentencings until July 14, 2017, the Court ordered that Defendants' Presentence Investigation reports ("PSRs") be made available to Defendants by June 2, 2017; that objections to the Defendants' PSRs be presented by June 16, 2017; and that the Final PSRs be presented by June 30, 2017 (*See* ECF No. 93).  Despite Bariven's clear victim status, as admitted in the Indictment itself, the

---

[9] These were Counts 1 and 2 in his Information and Counts 1 and 6 in the original Indictment.

[10] These were Counts 1 and 2 in his Information and Counts 1 and 4 in the original Indictment.  Count 3 in Rincon's Information was not originally charged in the Indictment.

---

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RECOGNITION OF ITS RIGHTS AS A**
**VICTIM AND ENTITLEMENT TO RESTITUTION**

**PAGE 9 OF 25**

Government never notified the Probation Office in Houston or contacted Bariven to notify it of its investigation, its plea negotiations with the Defendants, their plea agreements, their forfeiture agreements, or Bariven's right to seek victim status.  The Government ignored its statutory obligations under the CVRA.

The Government had a mandatory statutory obligation to inform Bariven of its statutory rights as a victim and to honor those victim rights.  Regardless of the Government's position on Bariven's victim status or its right to restitution, the Government failed to comply with its statutory obligation to notify Bariven of its rights under the law.  That dereliction of its statutory duty must be promptly addressed by this Court as it has already harmed Bariven by keeping it in the dark about the case, the plea agreements and forfeitures and any requests for continuances. This Court can halt this violation of its CVRA rights by granting Bariven victim status and then setting a restitution hearing prior to sentencing, so as not to further delay the sentencing schedule.

### E.    Bariven's Overpricing Investigation.

Following the publication of the Indictment in December 2015, Bariven immediately began an intensive and thorough independent investigation to discover the identities of the internal perpetrators of the Defendants' unlawful conspiracy, and to determine the scope of the conspiracy's financial impact.  All of the department heads at Bariven who worked at Bariven during the time frame of the conspiracy, including the President, General Managers for Procurement, Finance and Treasury are no longer with Bariven.[11]

---

[11] With Bariven on the sidelines without a victim's access to certain information, its effort to fully purge the company of bad actors has been impeded. The Indictment lists two unidentified co-conspirator foreign officials who may still be in the company and continuing to victimize Bariven's processes and treasury.

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF**    **PAGE 10 OF 25**
**MOTION FOR RECOGNITION OF ITS RIGHTS AS A**
**VICTIM AND ENTITLEMENT TO RESTITUTION**

Bariven retained a forensic team to analyze and quantify the financial impact of the Defendants' conspiracy upon Bariven. The preliminary forensic analysis of all Bariven purchase orders for the period January 1, 2009 through December 31, 2015 reveals that the Defendants overcharged Bariven by far more than the 10% in bribes that Rincon and Shiera have admitted to in their plea colloquies. In fact, Bariven was overcharged more than four times as much, or an average of nearly 48% per purchase order. These inflated contract prices from Rincon's and Shiera's companies resulted in Bariven overpaying their companies close to $600,000,000. Bariven is seeking recognition of its status and rights as a victim under the CVRA and its right to restitution from all of the Defendants, jointly and severally, in an amount equal to its losses under the MVRA.[12]

## SUMMARY OF ARGUMENT

This motion seeks to uphold the rights of Bariven, as the victim of the offenses to which these Defendants have pled guilty and obtaining restitution for its direct and proximate quantifiable losses, which are close to $600,000,000, under the CVRA and the MVRA. Both of these statutes' definition of "victim" overlap defining it as a person directly and proximately harmed by the commission of a Federal offense.

Under the CVRA federal prosecutors are required to identify victims and respect certain rights provided to them, including: the rights not to be excluded from public court proceedings, to be heard by the court in any public proceeding involving plea and sentencing, to confer with the attorney for the Government, and full and timely restitution. The Department of Justice, after

---

[12] MVRA, 18 U.S.C. § 3663A(a)(2); *see also* § 3663A(c)(1)(B); CVRA, 18 U.S.C. §§ 3771(a) and 3771(e)(2). Bariven is prepared to provide the Probation Office with an exact loss figure soon, and certainly far in advance of the presently scheduled sentencings.

clearly identifying Bariven as the victim, failed to notify Bariven or identify it as a victim to the Probation Office.

The MVRA requires courts to award restitution to victims in all sentencing proceedings for convictions of — or plea agreements relating to charges for — any offense against property under Title 18 of the U.S. Code, in which an identifiable victim has suffered a pecuniary loss, such as Bariven.

Rincon, Shiera and Millan have ***admitted*** to improperly paying in bribes and other things of value to former employees of a subsidiary of Bariven—Maldonado, Gravina and Ramos—for the purpose of illegally obtaining procurement contracts from Bariven to the direct and proximate detriment of Bariven.  The law of this Circuit establishes that Bariven is a victim entitled to restitution.

Accordingly, the Court should grant this Motion and, beginning immediately, the Court should require the United States to treat Bariven as a victim, entitled to all the rights provided to a victim under the CVRA, and then schedule a restitution hearing and order the Defendants, jointly and severally, to pay restitution.

## ARGUMENT AND AUTHORITIES

To partially remedy the Government's failure to afford Bariven any of its rights as a victim under the CVRA, including the right to be informed of plea discussions, the right to confer with the Government's attorney, its right to restitution for Bariven's direct and proximate losses caused by the Defendant's criminal conspiracy or scheme, the Court should grant this Motion to require the Government to treat Bariven as a victim for purposes of the CVRA and order the Defendants, jointly and severally, to make restitution to Bariven.

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RECOGNITION OF ITS RIGHTS AS A**
**VICTIM AND ENTITLEMENT TO RESTITUTION**

**PAGE 12 OF 25**

A.      **Restitution for Victims Under the MVRA, CVRA, and FCPA.**

      1.      **Requisite Notice and Victims' Rights Under the MVRA and CVRA.**

The MVRA "requires a district court to award restitution to victims 'directly and proximately harmed' by a defendant's offense." *United States v. De Leon*, 728 F.3d 500, 506 (5th Cir. 2013).

A "victim" under the MVRA includes any person "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a *scheme*, *conspiracy*, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the *scheme*, *conspiracy*, or pattern." 18 U.S.C. § 3663A(a)(2) (emphasis added); *see also* 18 U.S.C. § 3663A(c)(1)(B) (referencing "identifiable" victims).

The MVRA's definition of "victim" overlaps with the definition of "crime victim" in the CVRA which defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Compare* 18 U.S.C. § 3663A(a)(2), *with* 18 U.S.C. § 3771(e)(2). A "person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm." *In Re Fisher*, 649 F.3d 401, 402–03 (5th Cir. 2011). In order for an act to be the but-for cause of another event, the absence of the act would have to result in the nonoccurrence of the event. *Id.* at 403. The Court should ask "whether the injuries that the plaintiff suffered would probably still have occurred had the defendant behaved correctly in the sense indicated." *Id.* If the answer to that question is "No", then the defendant's conduct is a but-for cause of the plaintiff's injuries. *Id.* It is clear in this case that the Defendants' actions were a but-for cause of Bariven's losses.

Prior to submitting the PSR, The MVRA requires the probation officer to provide notice to all identified victims of:

> (1)   The *amounts subject to restitution* submitted to the probation officer;
>
> (2)   The opportunity of the victim to submit information to the probation officer concerning the *amount of the victim's losses*; and
>
> (3)   The opportunity of the victim to file with the probation officer a separate affidavit relating to the amount of the victim's losses subject to restitution.

18 U.S.C. § 3664(d)(2)(A)(ii)–(iii), (vi).

The CVRA imposes a duty on federal prosecutors to identify and provide fulsome notice to victims in criminal cases. *See* 18 U.S.C. § 3771(a)(2), (a)(9) and (a)(10); *see also* 18 U.S.C. § 3771(c)(1) (Department of Justice personnel "shall make their best efforts to see that crime victims are notified of, and accorded, the[ir] rights . . . ."). Courts are required to "take up and decide any motion asserting a victim's rights [under the CVRA] *forthwith*." 18 U.S.C. § 3771(d)(3) (emphasis added).

Crime victims possess the following rights, among others, under the CVRA:

> (1)   The **right not to be excluded** from any public court proceeding;
>
> (2)   The **right to be reasonably heard** at any public proceeding in the district court involving release, plea,[13] sentencing, or any parole proceeding;

---

[13] The Fifth Circuit has held that victims generally have the right to be informed of plea negotiations and confer with the prosecutor *before* agreement is reached. *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008). The right to be heard has been interpreted as conferring a right to *speak* at the hearing, not simply a right to make written submissions. *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (only way to vindicate victim's right to speak is to vacate the sentence and hold new sentencing hearing).

---

      (3)    The reasonable **right to confer** with the attorney for the Government in the case; and

      (4)    The **right to full and timely restitution** as provided in law.

18 U.S.C. § 3771(a)(3)–(6).

The Department of Justice, after clearly describing and identifying Bariven as the victim of these Defendants' conspiratorial acts of corruption and fraud, nonetheless failed to notify Bariven of its victim status or identify Bariven to the Probation Office as the victim.  As stated above, Bariven was never informed, much less consulted about the plea negotiations or guilty pleas entered by these Defendants, or the forfeiture of assets and personal money judgments.  It was never notified of the court dates; it was never notified of its right to be heard by the Court, or its right to confer with the attorneys for the Government, or to object to unreasonable delays of these proceedings.  The right to confer with the prosecutor has been interpreted as encompassing a right to obtain relevant information in the possession of the government. *United States v. Sacane*, No. 3:05cr325 (AHN), 2007 U.S. Dist. LEXIS 22178, at *4-7 (D. Conn. Mar. 28, 2007); *United States v. Ingrassia*, No. cr04-0455 (ADS) (JO), 2005 U.S. Dist. LEXIS 27817, at *50 (E.D.N.Y. Sept. 7, 2005), *objection denied*, 392 F. Supp. 2d 493 (E.D.N.Y. 2005). One purpose of the right to confer is to "enable victims to obtain information on which to base views to express to the court." *United States v. BP Prods. N. Am., Inc.*, No. H-07-434,  2008 U.S. Dist. LEXIS 12893, at *43-48 (S.D. Tex. Feb. 21, 2008) (collecting cases).

Without Bariven's diligence in monitoring the public dockets in these six cases, Bariven would have had no knowledge or information about the progress of these cases, or the plea agreements and the preliminary forfeiture orders agreed to by the prosecutors and Defendants. Bariven's already diminished ability to know about these Defendants' proceedings has been

further hampered by the Government's continued requests for the sealing of the plea agreements, hearing transcripts and pleadings in all of these Defendants' cases.

It appears that not a single plea agreement among these six Defendants includes any provision for restitution to the victim of their criminal acts. This, despite the Government's acknowledgement in its original Indictment that Bariven was the Defendants' victim. The amounts of the personal money judgments forfeited to the Government (totaling $26,608,340.28) as set forth in five of the Defendants' (except Rincon's) preliminary forfeiture orders do not even come close to disgorging the hundreds of millions of dollars in ill-gotten gains these Defendants derived from their conspiratorial acts to which they have pled guilty.

Incredibly, for a fraud of this magnitude, the Government has also recommended to this Court a Level 3 sentencing range for Rincon and Shiera, which will compute to little, if any, time in prison.

### 2.   The Standard for Determining Orders of Restitution.

Courts must "order restitution to each victim in the ***full amount of each victim's losses*** as determined by the court and ***without consideration of the economic circumstances of the defendant***." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). Notably, when the offense of conviction is conspiracy, "the harms the offense caused may include not only those resulting from the defendant's individual actions, but also others ***caused by the conspiracy itself***." *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) (emphasis added); 18 U.S.C. § 3663(a)(2); *De Leon*, 728 F.3d at 507; *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993).

Victims of bribery in violation of the FCPA may also find redress through restitution. Indeed, U.S. courts have ordered restitution to foreign governments harmed by foreign bribery in

violation of the FCPA. *See, e.g., United States v. Diaz*, No. 09-20346-cr-jem (S.D. Fla. July 30, 2010) (president of company that concealed the corrupt origin of funds by submitting false invoices to cover up the bribery of Haitian officials ordered to pay restitution to the Haitian government); *United States v. F.G. Mason Engineering, Inc.*, No. B-90-29 (JAC) (D. Conn. Nov. 21, 1990) (pursuant to 18 U.S.C. § 371 and 15 U.S.C. § 78dd-2 (FCPA), ordering defendant to make restitution to German government because of corrupt arrangement with West German military intelligence service official); *United States v. Kenny Int'l Corp.*, Cr. No. 79-00372 (D.D.C. Aug. 2, 1979) (pursuant to plea agreement under 15 U.S.C. § 78dd-2, ordering restitution to the government of Cook Island for providing financial assistance in connection with an election, in return for the renewal of a stamp distribution agreement).[14]

The U.S. Government[15] has been criticized in a 156 page report commissioned by the World Bank and the United Nations for failing to notify foreign victim governments of their right to seek restitution and to participate in the criminal proceedings in FCPA prosecutions. *See Left out of the Bargain: Settlements in Foreign Bribery Cases and Implications for Asset Recovery* (Stolen Asset Recovery Initiative, The World Bank and UNODC, 2013) at 2-5 (Executive Summary), 86-96 (Modes of Participation in Criminal Enforcement Actions for the

---

[14] In *United States v. Alcatel-Lucent France, S.A.*, Case No. 1:10-cr-20906 (S.D. Fla. May 23, 2011) (U.S. Government's Response to the Instituto Costarricense de Electricidad ("ICE") Petition for Victim Status and Restitution), although the Government refused to recognize ICE as a victim it was responsive and engaged, and provided ICE with information and materials when requested. The Government here has not provided any such consideration to Bariven.

[15] Other governments were also criticized, but as the primary enforcer of international anti-corruption laws – compare 199 enforcement actions by the U.S. compared to only 30 by the U.K. ranked second – the U.S. justifiably shoulders the brunt of the criticism. *See* Trace International, Global Enforcement Report 2015, page 7 (March 2016) at www.traceinternational.org/uploads/publicationfiles/traceglobalenforcementreport2015.pdf (*See* Exhibit A for Trace International Graph referred to in this footnote.)

---

**BARIVEN, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECOGNITION OF ITS RIGHTS AS A
VICTIM AND ENTITLEMENT TO RESTITUTION**

**PAGE 17 OF 25**

Purpose of Asset Recovery).[16]  Despite this clarion call, which is well known to the U.S. Justice Department, the Government has done the same thing in this case in contravention of its statutory obligations under the MVRA and the CVRA.

### 3.    Importance of Restitution Orders and Making the Victim Whole.

Courts are required to forgo or limit a fine "or other monetary penalty" to the extent necessary to avoid "impair[ing] the ability of the defendant to make restitution." 18 U.S.C. § 3572(b).  In other words, making restitution to a victim of the offense "other than the United States" takes precedence over a fine or other monetary penalty.  *Id.*  The words "monetary penalty" include forfeiture money judgments.  Indeed, providing restitution to victims takes priority over "[a]ll other fines, penalties, costs[,] and other payments required under the sentence." 18 U.S.C. § 3612(c).  By the Government's act of ignoring the CVRA in this case, it was able to obtain unchallenged agreements with each of these six Defendants, including personal money judgments totaling only $26,608,340.28.

### 4.    Burden of Proof and Standard of Review of Orders of Restitution.

The "government has the burden of proving a victim's actual losses." *De Leon*, 728 F.3d at 506 (citing 18 U.S.C. § 3664(e)).  Any dispute as to the proper amount or type of restitution "shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e); *De Leon*, 728 F.3d at 506–07.  Although the Government normally proves the amount of loss and causation, § 3664 "also authorizes the district court to allow a victim to prove up its own claim for restitution when the court deems it appropriate to do so." *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 924

---

[16] A copy of these pages from the report is attached to this motion as Exhibit B.

(9th Cir. 2001)).  That would certainly be appropriate here where the Government has repeatedly violated Bariven's statutory rights as a victim and will in all likelihood oppose its restitution claim.

Bariven stands ready to prove its losses through an independent, forensic accounting analysis.  These rigorous calculations will be shared with the Probation Office so Bariven's losses can be included in the PSRs and provided to the Government and Defendants in a timely fashion.

### B.    Bariven is a Victim Under Both the MVRA and CVRA.

This criminal enterprise has directly and proximately caused Bariven quantifiable losses close to $600,000,000.  The Indictment, the Defendants' admissions, and the law of this Circuit establish that Bariven is a victim entitled to restitution. It is not for the Government to decide unilaterally that Bariven does not, in its opinion, "deserve" to be treated as as such.[17]  That is a decision for this Court to make only after a full hearing.   Allowing the Government to unilaterally decide *at the outset* that someone is not a victim can become a self-fulfilling *ipse dixit* because it may prevent the victim from ever obtaining the factual information necessary to show that it is, in fact, a victim of the offense of conviction and the amount of its losses under the MVRA.

---

[17] Such an error could result in the setting aside of the sentences the Court imposes, if the Court of Appeals decided that Bariven should have been afforded the rights of a victim under the CVRA. *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (only way to vindicate victim's right to speak is to vacate the sentence and hold new sentencing hearing).

     1.    **The Government's Indictment Recognizes that Bariven is a Victim.**

As explained above, the original Indictment and the conspiracy counts to which Rincon and Shiera pled guilty acknowledges Bariven was victimized by all six Defendants' unlawful acts. The original Indictment catalogues several occasions on which the Defendants furtively overcharged Bariven for various contracts and projects, and even billed Bariven for equipment not delivered and services not performed, or never completed at all. (*See Indictment*, at ¶¶ 28, 36, 66, 76, and 96). The Indictment also acknowledges the Defendants "conceal[ed]" their criminal conspiracy from Bariven by "creat[ing] the false appearance that the bidding process was competitive," and "preventing interference with the selection of [the Defendants Rincon and Shiera] companies" for Bariven contracts. *Id.* at ¶¶ 28, 32, 35.

     2.    **The Defendants Have Admitted to Victimizing Bariven.**

Bariven understands that Rincon and Shiera admitted in open court that their companies paid bribes up to 10% of the value of the contracts illegally awarded to them. The amounts of the bribes were factored into the amount of the invoices issued to Bariven, thereby fraudulently inflating them. Defendants Rincon and Shiera also have admitted to receiving Bariven's proprietary information, and bribing former Bariven employee Defendants so that their companies were fraudulently placed on and selected from numerous bidding panels. These admissions alone establish that Bariven is a victim of the Defendants' criminal conspiracy, and Bariven's exhaustive internal investigation and forensic analysis has quantified the financial impact of Defendants' actions to be much more than the 10% in bribes paid by Rincon and Shiera. In fact it is more than four times that amount (approximately 48%). As explained above,

Bariven's losses directly and proximately caused by all six Defendants are close to $600,000,000.

### 3. The Grand Jury's Indictment and the Defendants' Admissions Establish that Bariven is a Victim as a Matter of Law.

The operative legal effect of the acts condemned by the Grand Jury and to which the Defendants have admitted, is to make Bariven a victim under the MVRA and CVRA.

The evidence before the Court shows that, but for Defendants' solicitation, recruitment, and corruption of the Bariven employee Defendants, Bariven would not have suffered losses from systematic overcharging, fraudulent concealment, and criminal conspiracy. *In Re Fisher*, 649 F.3d at 402–03.

The record in this case also confirms that Bariven is not itself a co-conspirator. Specifically, the Defendants and the Government agree that all Defendants actively worked to conceal their fraudulent acts from panel placements, other corporate bidders, and collaborated to disguise the nature, location, source, ownership, and control of the proceeds of their specified unlawful activities. **Furthermore, it is clear that none of the bribed employees of Bariven were trying to benefit Bariven, or anyone else except themselves.** To the contrary, they were robbing Bariven blind for their own personal gain and financial benefit. Thus, none of their criminal behavior may be vicariously attributed to Bariven. *See* 8th Circuit's Pattern Criminal Jury Instruction 5.03 and the 3rd Circuit's Pattern Criminal Jury Instruction 7.06;[18] *accord United States v. Barrett*, 51 F.3d 86, 89 (7th Cir. 1995) ("common sense dictates that when an employee acts to the detriment of his employer and in violation of the law, his actions normally will be deemed to fall outside the scope of his employment and thus will not be imputed to his

---

[18] See Composite Exhibit C for 3rd and 8th Circuits' Pattern Criminal Jury Instructions.

employer."); *Standard Oil Co. of Tex. v. United States*, 307 F.2d 120, 129 (5th Cir. 1962) ("the corporation does not acquire that knowledge or possess the requisite 'state of mind essential for responsibility,' through the activities of unfaithful servants whose conduct was undertaken to advance the interests of parties other than their corporate employer."); *Smith-Perry Elec. Co. v. Transp. Clearings of L.A.,* 243 F.2d 819, 821 (5th Cir. 1957) (it is "elementary that a transaction outside the scope of the agent's authority, actual or apparent, is incapable of subjecting the principal to liability.").[19]

### C.     As a Victim Under the MVRA and CVRA, Bariven Has a Right to Restitution and Is Entitled to Participate in these Proceedings.

Bariven has the right, among others provided by the CVRA: (1) not to be excluded from any public court proceeding; (2) to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; (3) to confer with the attorneys for the Government in the case and be informed by them; and (4) to be considered by the Court for "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(3)–(6).

Bariven's right to restitution extends to the "full amount of [its] … losses … without consideration of the economic circumstances" of the Defendants.  18 U.S.C. § 3664(f)(1)(A). Here, because the Defendants have pled guilty to conspiracy, the quantification of the "harms the offense caused" include harm "caused by the conspiracy itself." *Laney*, 189 F.3d at 965.  We recognize that this amount is limited to the time span defined by the "specific temporal scope" of the Indictment.  *De Leon*, 728 F.3d at 507.  The Indictment describes overt acts of conspiracy committed by the Defendants (regarding which they have admitted guilt) beginning in

---

[19] The Fifth Circuit's Pattern Criminal Jury Instructions do not include an instruction on corporate criminal responsibility.

October 2009 and ending in December 2014).[20]   (*See Indictment*, at ¶¶ 24, 37–84).   Properly limited to this time frame, Bariven's preliminary overpricing analysis calculates that the Defendants overcharged Bariven close to $600,000,000.   Accordingly, Bariven is entitled to proper notice and various participatory rights under the MVRA and CVRA, and has a right to restitution for the amount of the compensable losses it proves at the restitution hearing.

## CONCLUSION

For the foregoing reasons, Bariven respectfully requests that the Court:

(1)   Grant its Motion;

(2)   Order the United States to treat Bariven as a victim entitled to all the rights provided to a victim under the CVRA and the MVRA.

(3)   Order the Defendants to make restitution to Bariven in an amount of losses to be determined by the Court;

(4)   Order the Defendants to make restitution to Bariven for the legal fees and other expenses reasonably incurred in its investigation of the offense conduct and its participation in these proceedings;[21] and

(5)   Award Bariven all other and further relief to which it is entitled under the MVRA and the CVRA.

---

[20] In Rincon's guilty plea colloquy, he admitted to conspiracy to violate the FCPA from 2009 through 2014. In Shiera's guilty plea colloquy, he admitted to conspiring to violate the FCPA from 2009 through 2015.  Bariven's losses are calculated through 2015 since numerous contracts secured by both of these Defendants were paid by Bariven in 2015.

[21] *See* 18 U.S.C. § 3663A(b)(4); *United States v. Herrera*, 606 Fed. App'x 748, 752-53 (5th Cir. 2015); *United States v. Nosal*, 828 F.3d 865, 8886-88 (9th Cir. 2016); *United States v. Eyraud*, 809 F.3d 462, 467-68 (9th Cir. 2015).

DATED and FILED November 30, 2016    Respectfully submitted,

*/s/ Michael J. Hinton*
Michael J. Hinton
mhinton@hintonbailey.com
Texas State Bar No. 09710000
S.D. Texas Bar No. 1037384
HINTON & BAILEY LLP
5300 Memorial Drive, Suite 1000
Houston, Texas  77007-8290
Telephone:  (713) 864-4477
Facsimile:  (713) 864-8738

**Counsel for Bariven, S.A.**

*/s/ David B. Smith*
David B. Smith
dbs@davidsmithpllc.com
Virginia Bar No. 25930
David B. Smith, PLLC
108 N. Alfred Street
Alexandria, VA 22314
Telephone:  (703) 548-8911
Facsimile:  (703) 548-8935
Pro Hac Vice Application Pending

**Counsel for Bariven, S.A.**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 30, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system for filing and service on all counsel of record.

*/s/ Michael J. Hinton*
Michael J. Hinton, Counsel for Bariven, S.A.